MARY GUILLE *v.* PETER GUILLE, JR.
(12156)

HEALEY, PARSKEY, SHEA, KLINE and BRENNAN, JS.

Argued February 15—decision released May 14, 1985

*Carolyn P. Kelly,* for the appellant (defendant).

*Thomas B. Wilson,* with whom, on the brief, were *Thomas A. Bishop* and *Kerin M. Woods,* for the appellee (plaintiff).

*Harold M. Lubin,* for the minor children.

PARSKEY, J. The principal issue in this case is whether a court may properly delete from a judgment of marital dissolution a provision that would preclude any future judicial modification of the terms governing child support contained in the original divorce

decree. Six years after the marriage of the parties was dissolved, the trial court that had entered the judgment of dissolution granted a motion, brought on behalf of the parties' minor children, to open the judgment and delete therefrom a provision precluding modification of custody and child support. The defendant father appeals from the trial court's decision, claiming that the court lacked jurisdiction to open the earlier judgment and alter its terms, and that even if the court had jurisdiction to modify the judgment, it was error to do so. We find no error.

The facts relevant to this appeal are undisputed. The marriage of the parties was dissolved on July 16, 1976. Before the dissolution was granted, the defendant husband and the plaintiff wife had entered into a stipulation which provided for division of property, periodic and lump sum alimony and custody, visitation, care and education of the parties' three minor children. Included in the stipulation was the following provision: "In accordance with Sec. 46-54 of the Connecticut General Statutes [now General Statutes § 46b-86 (a)], all of the provisions of this agreement except for the visitation provisions are not subject to modification or change by any court at any future date. The parties entered into this agreement with the understanding that all of the provisions of this agreement, except for the visitation provisions, shall preclude their being modified, altered, amplified, amended, cancelled, or terminated." This provision was included, essentially verbatim, in paragraph seven of the judgment of dissolution, which further provided in paragraph eight that "[t]he Stipulation entered into between the parties . . . is hereby incorporated by reference and made a part of the court file." See General Statutes § 46b-66.

At the time of the dissolution, the plaintiff and the defendant were each represented by counsel, but no counsel was requested or appointed to represent the

parties' children, who were then ages six, four and almost two. On February 10, 1982, the plaintiff mother, who has had custody of the children since the divorce, moved that counsel be appointed to represent the minor children, which motion was granted by the court over the defendant's objection. The children's counsel filed a motion on September 3, 1982, requesting the court to "correct" the judgment of dissolution "by deleting from said judgment the provision precluding modification of custody and support." This motion was supported by the plaintiff and opposed by the defendant.

A hearing was held on the motion, at which counsel for both parties and the minor children argued before the same judge that entered the judgment of dissolution. On April 20, 1983, the court granted the children's motion to correct "by opening the judgment and deleting therefrom the provision precluding modification of custody and support," from which decision the defendant appeals.

The defendant argues that the 1976 judgment of marital dissolution "is *res judicata* as to the issue of whether or not support can be modified . . ." and that the trial court thus lacked jurisdiction to open the judgment and alter its terms. He maintains that the provision precluding judicial modification, included in the parties' stipulation and the trial court's decree, and General Statutes § 46b-86 (a) (expressly referred to in that provision as former § 46-54), should have prevented the court from deleting the provision to permit modification of the terms of child support as set forth in the stipulation and the judgment. We disagree.

General Statutes § 46b-56 (a) provides that in an action for dissolution of marriage, the superior court "may at any time make or modify any proper order regarding the education and support of the [minor] children . . . . " We have interpreted this statutory lan-

guage to confer continuing jurisdiction on the court to modify child support orders entered incident to a judgment of marital dissolution. "[T]he order to pay child support in a divorce judgment is not a final adjudication of the rights and duties of the parent and the minor child. The court has continuing jurisdiction to modify such an order." *Sillman* v. *Sillman,* 168 Conn. 144, 149, 358 A.2d 150 (1975); see *Cleveland* v. *Cleveland,* 165 Conn. 95, 100, 328 A.2d 691 (1973). The "rights and duties" referred to in *Sillman,* supra, are set forth in General Statutes § 46b-84 (a) as follows: "Upon or subsequent to the . . . dissolution of any marriage or the entry of a decree of . . . divorce, the parents of a minor child of the marriage, shall maintain the child according to their respective abilities, if the child is in need of maintenance." This statutory provision, by imposing a duty on divorced parents to support the minor children of their marriage, creates a corresponding right in the children to such support.

Although child support orders rendered pursuant to General Statutes § 46b-56 are made and enforced "as incidents to divorce decrees"; *Kennedy* v. *Kennedy,* 177 Conn. 47, 50, 411 A.2d 25 (1979); the minor children's right to parental support has an independent character, separate and apart from the terms of the support obligations as set out in the judgment of dissolution. "A divorce decree for support of children by the father does not affect the rights of the children as against the father, since such a decree relates merely to the relative rights and duties of the parents toward each other." 2 Nelson, Divorce and Annulment (2d Ed. 1961) § 14.98. The independent nature of a child's right to parental support was recognized by this court long before that right was codified in our statutes. In *Burke* v. *Burke,* 137 Conn. 74, 79, 75 A.2d 42 (1950), we held that an agreement concerning child support executed between a separating husband and wife did not afford

a defense against the right of action by the couple's two minor children against their father for additional support. "[N]o such contract by a father can restrict or preclude the power of the court to decree what he shall pay for the support of a dependent minor child. A husband and wife cannot make a contract with each other regarding the maintenance or custody of their child which the court is compelled to enforce, nor can the husband relieve himself of his primary liability to maintain his child by entering into a contract with someone else to do so. The welfare of the child is the primary consideration. The court 'may recognize the contract, but such contract will not be enforced longer than it appears to be for the best interests of the child, and parents entering into such a contract are presumed to do so in contemplation of their obligations under the law and the rights of the child.' " (Citations omitted.) Id., 80; see Nelson, supra, §§ 14.77 and 15.58.

General Statutes § 46b-86 (a), upon which the defendant chiefly relies, provides in pertinent part: "Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support . . . may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party." The defendant claims that the 1976 divorce decree did in fact preclude any future judicial modification of child support by providing, "[i]n accordance with Sec. 46-54 [now § 46b-86 (a)] of the Connecticut General Statutes, [that] all of the provisions of the Stipulation entered into by the parties dated July 15, 1976, except for the visitation provisions, are not subject to modification or change by any court at any future date." While he concedes that General Statutes § 46b-86 (a) "does not allow a judgment to prevent modification of a final order for custody" and that "[t]o the extent that the stipulation

and decree in the instant case attempt to do so . . . it is [sic] probably ineffective," he asserts that "the Stipulation and the Judgment clearly show that the intent of the parties was to preclude modification by the Court of the support order."

We conclude that neither the general language of General Statutes § 46b-86 (a), permitting the court to modify support "[u]nless and to the extent that the decree precludes modification," nor the decree's broadly phrased nonmodifiability provision, was effective to restrict permanently the court's power to modify the terms of child support under the circumstances of this case.

The 1976 divorce decree was a stipulated judgment. "Such a judgment is not a judicial determination of any litigated right. . . . It may be defined as a contract of the parties acknowledged in open court and ordered to be recorded by a court of competent jurisdiction. . . . The essence of the judgment is that the parties to the litigation have voluntarily entered into an agreement setting their dispute or disputes at rest and that, upon the agreement, the court has entered judgment conforming to the terms of the agreement." (Citations omitted.) *Bryan* v. *Reynolds,* 143 Conn. 456, 460, 123 A.2d 192 (1956). "We have indicated on several occasions that settlement agreements incorporated into dissolution judgments should be interpreted consistently with accepted contract principles." *Marsico* v. *Marsico,* 195 Conn. 491, 493, 488 A.2d 1248 (1985).

The provision precluding modification, as interpreted by the defendant, would effectively limit his minor children's right to parental support to the specific terms set out in the 1976 stipulation and decree. As previously discussed, the common law prohibited parents from contractually restricting or defeating their children's right to support. *Burke* v. *Burke,* supra. To the

extent that General Statutes § 46b-86 (a) would permit this result, it must be narrowly construed as a statute in derogation of the common law. " 'In determining whether or not a statute abrogates or modifies a common law rule the construction must be strict, and the operation of a statute in derogation of the common law is to be limited to matters clearly brought within its scope. . . .' " (Citation omitted.) *Edmundson* v. *Rivera,* 169 Conn. 630, 633, 363 A.2d 1031 (1975). By contrast, this court has construed broadly statutes providing for parental support of minor children. See *Faraday* v. *Dube,* 175 Conn. 438, 443, 399 A.2d 1262 (1978) ("The history of judicial interpretation of the Connecticut paternity statutes reflects the propensity of this court to construe liberally the term 'maintenance' so as to carry out the underlying purpose of the legislation and assure that the child is well provided for.")

We do not believe that in enacting General Statutes § 46b-86 (a) the legislature intended to depart from the common law rule rendering contracts between parents regarding child support ineffective to limit their children's right to parental support. The statute was proposed in 1973 as part of House Bill No. 8235, the so-called "no-fault divorce bill." Other statutory provisions included in that bill and enacted simultaneously with General Statutes § 46b-86 (a) indicate a clear intent to protect the rights of minor children in actions for marital dissolution. See, e.g., General Statutes § 46b-56 (broad grant of judicial authority to make or modify orders regarding the custody and care of minor children in dissolution, separation or annulment actions); General Statutes § 46b-54 (discretionary appointment of counsel for minor children in divorce actions, to be heard on all matters relating to children's best interests, including custody, care, support, education and visitation); General Statutes § 46b-84 (setting out par-

ents' obligation for maintenance of minor children upon marital dissolution). In addition, statements made before the House, the Senate, and the Joint Standing Committee on the Judiciary when House Bill No. 8235 was under consideration further suggest an intent to expand the protections accorded the children of divorcing parents. See, e.g., 16 H.R. Proc., Pt. 4, 1973 Sess., pp. 1464, 1466; 16 S. Proc., Pt. 3, 1973 Sess., pp. 1408, 1413–14; Joint Standing Committee Hearings, Judiciary, Pts. 1, 2, 1973 Sess., pp. 208–209, 462–63, 551. In light of the legislature's evident concern for the rights of minor children in marital dissolution proceedings, we cannot conclude that General Statutes § 46b-86 (a) was designed to change the common law and permit divorcing parents, by stipulation incorporated into the divorce decree, to contractually limit their children's right to support.

Although the 1976 stipulation and judgment may have been effective to define permanently the support obligations of the divorcing parties as between themselves, neither their agreement nor the court's decree can be held binding as to their minor children, who were unrepresented during both the negotiation of the stipulation and the dissolution proceedings.[1] Since the stipulation is merely a contract between the defendant husband and the plaintiff wife, it could not affect the minor children's right of action for parental maintenance. *Burke* v. *Burke,* supra, 79. The divorce decree was likewise ineffective to establish conclusively the extent of the children's support rights because they

---

[1] This court has previously considered the important roles of judges and attorneys in matrimonial proceedings, particularly in cases where the parties have reached a stipulated divorce settlement. *Monroe* v. *Monroe,* 177 Conn. 173, 182–84, 413 A.2d 819, appeal dismissed, 444 U.S. 801, 100 S. Ct. 20, 62 L. Ed. 2d 14 (1979). These observations, which were made with reference to the adult parties to the action, seem that much more compelling when applied to minor children necessarily affected by the judgment in the case.

were not represented when that judgment was entered. "It is a fundamental premise of due process that a court cannot adjudicate a matter until the persons directly concerned have been notified of its pendency and have been given a reasonable opportunity to be heard in sufficient time to prepare their positions on the issues involved." *Costello* v. *Costello,* 186 Conn. 773, 776–77, 443 A.2d 1282 (1982); see *Johnson* v. *Bessette,* 37 Conn. Sup. 891, 896, 442 A.2d 70 (1981) (In motion by defendant father "to 'terminate and vacate all parental obligations, support orders, arrearages and agreements' . . . [i]t was . . . incumbent upon the defendant to seek modification and joinder of the mother and the child who had an interest in the matter.'')[2] Since the court was without power to enter an order that would permanently restrict the unrepresented children's rights, it was not error, upon a motion by the children, to open the 1976 divorce judgment and delete the provision purporting to preclude modification of child support and custody. See *Broaca* v. *Broaca,* 181 Conn. 463, 467–69, 435 A.2d 1016 (1980).

There is no error.

In this opinion HEALEY and BRENNAN, Js., concurred.

---

[2] Even if the children had been represented in the 1976 dissolution proceedings, it is doubtful whether the general language of the nonmodifiability provision contained in the divorce decree constituted adequate notice that the children's support rights were included in the broad proscription against future judicial action. Despite the language of General Statutes § 46b-86 (a), we have treated ambiguous orders regarding alimony to be modifiable. *Cummock* v. *Cummock,* 180 Conn. 218, 222–23, 429 A.2d 474 (1980); *Scoville* v. *Scoville,* 179 Conn. 277, 280, 426 A.2d 271 (1979). This presumption favoring modifiability should apply with equal if not greater force with respect to orders for child support, given the broad grant of power to make and modify child support orders expressed in General Statutes § 46b-56. Thus, although General Statutes § 46b-86 (a) does permit a court to limit or preclude modification of support in a divorce decree, it must express its intention to do so in clear and unambiguous terms. It is difficult to conclude that a broad provision precluding judicial modification of "all of the provisions of the Stipulation . . . except for the visitation provisions" would be enforceable with regard to child support.

SHEA, J., with whom KLINE, J., joins, concurring. I disagree with the analysis that General Statutes § 46b-86 (a) was not designed to change the common law by permitting parents, by stipulation incorporated into a dissolution decree, to limit their children's right to support. The statute expressly excepts from the power to modify "any final order for the periodic payment of permanent alimony *or support*" those decrees that preclude such modification. (Emphasis added.) From the viewpoint of statutory construction, a provision in a decree barring modification of support is no less effective than one prohibiting modification of alimony, the validity of which we have implicitly recognized. See *Holley* v. *Holley,* 194 Conn. 25, 31, 478 A.2d 1000 (1984); *Connolly* v. *Connolly,* 191 Conn. 468, 473, 464 A.2d 837 (1983); *McGuinness* v. *McGuinness,* 185 Conn. 7, 9, 440 A.2d 804 (1981); *Scoville* v. *Scoville,* 179 Conn. 277, 279–80, 426 A.2d 271 (1979).

Though I disagree with the statutory construction analysis of the opinion, I agree with the result reached upon constitutional grounds. To permit parents in a dissolution action, where their individual interests frequently conflict with those of their children, to preclude by their agreement any future judicial inquiry into the adequacy of support arrangements for their minor children who are not separately represented, no matter how the circumstances of the children may change, is a taking of property without due process of law. *Fuentes* v. *Shevin,* 407 U.S. 67, 96, 92 S. Ct. 1983, 32 L. Ed. 2d 556, reh. denied, 409 U.S. 902, 93 S. Ct. 177, 34 L. Ed. 2d 165 (1972); *Sniadach* v. *Family Finance Corporation,* 395 U.S. 337, 341–42, 89 S. Ct. 1820, 23 L. Ed. 2d 349 (1969); *Roundhouse Construction Corporation* v. *Telesco Masons Supplies Co.,* 168 Conn. 371, 362 A.2d 778, vacated, 423 U.S. 809, 96 S. Ct. 20, 46 L. Ed. 2d 29 (1975), aff'd on remand, 170 Conn. 155, 365 A.2d 393, cert. denied, 429 U.S. 889, 97 S. Ct. 246,

50 L. Ed. 2d 172 (1976). Perhaps the majority opinion also rests partly on this constitutional ground. As I think the legislative intent is clearly expressed in the statute and does sanction the preclusion of support as well as alimony modification in a dissolution decree, I must rest wholly on the constitutional ground in concurring with the result reached.