******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

LISA KEUSCH *v.* KENNETH KEUSCH
(AC 39395)

Sheldon, Elgo and Stevens, Js.

*Syllabus*

The defendant appealed to this court from the judgment of the trial court
dissolving his marriage to the plaintiff and awarding the plaintiff alimony
and child support. *Held*:

1. The trial court erroneously computed the defendant's presumptive mini-
mum child support obligation: that court erred in calculating child sup-
port on the basis of the defendant's earning capacity, which may be
used as a deviation criterion but should not be used to determine the
presumptive support amount itself, without first determining the defen-
dant's actual income and using that determination to state the presump-
tive support amount under the child support guidelines, and that court
also erred by failing to make a finding that application of the guidelines
would be inequitable or inappropriate, as required by the relevant state
regulation (§ 46b-215a-5c [a]); moreover, although the error pertained
only to the trial court's determination of child support, the proper remedy
for the trial court's errors with respect to its financial orders was to
remand the matter to that court for reconsideration of all of its finan-
cial orders.

2. The trial court abused its discretion by ordering the defendant to pay
nonmodifiable unallocated alimony and child support; that court's order
provided that the duration and the amount of alimony and support to
be paid by the defendant were nonmodifiable by either party, which
improperly precluded reductions based on each child attaining the age
of majority, as the parties had three children and the result of that order
was that the defendant would be unable to seek modification as each
child attained the age of majority, even though the obligation of a parent
to support a child terminates when a child attains that age.

Argued January 2—officially released September 18, 2018

*Procedural History*

Action for the dissolution of a marriage, and for other
relief, brought to the Superior Court in the judicial dis-
trict of Stamford-Norwalk and tried to the court, *Tin-
dill, J.*; judgment dissolving the marriage and granting
certain other relief, from which the defendant appealed
to this court; thereafter, the court, *Tindill, J.*, denied
the defendant's motion for articulation; subsequently,
this court granted the defendant's motion for review
but denied the relief requested; thereafter, the court,
*Tindill, J.*, issued an articulation of its decision.
*Reversed in part*; *further proceedings*.

*Gaetano Ferro*, with whom, on the brief, was *Olivia
M. Hebenstreit*, for the appellant (defendant).

*Yakov Pyetranker*, for the appellee (plaintiff).

*Opinion*

STEVENS, J. The defendant, Kenneth Keusch, appeals from the judgment of the trial court dissolving his marriage to the plaintiff, Lisa Keusch, and entering related financial orders. On appeal, the defendant claims that the trial court (1) erroneously computed his presumptive minimum child support obligation and (2) abused its discretion by ordering the defendant to pay nonmodifiable unallocated alimony and support.[1] We agree with the defendant and, accordingly, we reverse in part the judgment of the trial court.

The following facts, as found by the trial court, and procedural history are relevant to our consideration of the issues raised on appeal. The plaintiff and the defendant were married on July 19, 1997. They are the parents of three minor children. By complaint dated February 26, 2014, the plaintiff sought, inter alia, dissolution of the parties' marriage, custody of the minor children, and temporary and permanent alimony and child support. On June 21, 2016, following a trial over several days on financial and property issues, the court dissolved the parties' marriage. In its memorandum of decision, the court ordered, inter alia, that the defendant pay unallocated alimony and support to the plaintiff in the amount of $12,500 per month "until the death of either party, the [p]laintiff's remarriage, or November 3, 2025, whichever shall occur first."[2] The duration and the amount to be paid were nonmodifiable by either party. The court indicated that it was deviating from the child support guidelines' (guidelines) presumptive support amount of $752 per week "based on the extraordinary disparity in income and the provision of alimony." The defendant then filed the present appeal.

Before addressing the merits of the defendant's claims, we first set forth the applicable standard of review in domestic relations matters. "[T]his court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . As has often been explained, the foundation for this standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Notwithstanding the great deference accorded the trial court in dissolution proceedings, a trial court's ruling . . . may be reversed if, in the exercise of its discretion, the trial court applies the wrong standard of law." (Internal quotation marks omitted.) *LeSueur* v. *LeSueur*, 172 Conn. App. 767, 774, 162 A.3d 32 (2017).

"Individual financial orders in a dissolution action are part of the carefully crafted mosaic that comprises

the entire asset reallocation plan. . . . Under the mosaic doctrine, financial orders should not be viewed as a collection of single disconnected occurrences, but rather as a seamless collection of interdependent elements. Consistent with that approach, our courts have utilized the mosaic doctrine as a remedial device that allows reviewing courts to remand cases for reconsideration of all financial orders even though the review process might reveal a flaw only in the alimony, property distribution or child support awards." (Internal quotation marks omitted.) *Barcelo* v. *Barcelo*, 158 Conn. App. 201, 226, 118 A.3d 657, cert. denied, 319 Conn. 910, 123 A.3d 882 (2015).

Guided by these principles, we will address the defendant's claims on appeal.

I

We first consider the defendant's claim that the court erroneously computed his minimum child support obligation. Specifically, the defendant argues that the court erred in calculating his presumptive child support obligation on the basis of his earning capacity rather than his actual earnings. He contends that the court did not calculate the amount of child support that would have been required based upon actual income, nor did it make a finding that application of the guidelines would be inequitable. We agree.

The following additional facts are necessary for the resolution of this issue. In its initial memorandum of decision, the court ordered the defendant to pay $12,500 to the plaintiff each month as unallocated alimony and support.[3] The court did not indicate whether this award was based on the defendant's actual earnings or earning capacity. The court attached a worksheet for the Connecticut Child Support and Arrearage Guidelines (worksheet), prepared by the Connecticut Judicial Branch, to its memorandum of decision. The worksheet indicated that the defendant's gross weekly income was $5288, or approximately $275,000 per year, and his net weekly income was $3392, or $176,384 per year. On December 6, 2016, the defendant filed a motion for articulation asking the court to articulate, inter alia, the bases on which the court completed the worksheet. Specifically, the defendant asked the court to articulate the factual basis on which it determined that his gross weekly income was $5288, the factual basis for each deduction from gross weekly income and the factual basis for its determination that his net weekly income was $3392. The court denied the motion, and the defendant filed a motion for review. This court thereafter granted review but denied the requested relief.

In his principal appellate brief, the defendant argued that the court's erroneous calculation of his gross and net income lacked evidentiary support. In response, the plaintiff argued that the court's income findings were

not based on the defendant's actual income, but were based on his earning capacity, and that these findings were supported by the record. At oral argument before this court, we questioned both sides regarding whether the trial court's financial award was based on the defendant's actual earnings or earning capacity. Following oral argument, we ordered the court to articulate whether the finding of weekly gross income of $5288, as recorded on the worksheet, represented a finding as to the defendant's actual income or the earning capacity and the factual basis for that finding.[4] In its articulation, the court indicated that the gross weekly income amount of $5288 reflected on the worksheet represented the defendant's earning capacity.[5]

Section 46b-215a-5c (a) of the Regulations of Connecticut State Agencies provides in relevant part that "[t]he current support . . . amounts calculated under [the regulations] . . . are presumed to be the correct amounts to be ordered. The presumption regarding each such amount may be rebutted by a specific finding on the record that such amount would be inequitable or inappropriate in a particular case. . . . Any such finding shall state the amount that would have been required under such sections and include a factual finding to justify the variance. Only the deviation criteria stated in . . . this section, and indicated by the check boxes in section VIII of the worksheet, shall establish sufficient bases for such findings." "Earning capacity is . . . found among the criteria for deviation from presumptive support amounts, as a type of financial [resource] that [is] not included in the definition of net income, but could be used by such parent for the benefit of the child or for meeting the needs of the parent." (Internal quotation marks omitted.) *Battistotti* v. *Suzanne A.*, 182 Conn. App. 40, 52 n.8,    A.3d (2018).

In *Fox* v. *Fox*, 152 Conn. App. 611, 632, 99 A.3d 1206, cert. denied, 314 Conn. 945, 103 A.3d 977 (2014), this court held that the trial court erred in determining the defendant's modified child support obligation because it based its calculations on the defendant's imputed income and not on his actual income and the minor children's demonstrated needs. "Under the guidelines, the child support obligation first is determined without reference to earning capacity, and earning capacity becomes relevant only if a deviation from the guidelines is sought" under § 46b-215a-5c (b) (1) (B) of the Regulations of Connecticut State Agencies. (Internal quotation marks omitted.) Id., 635. "[T]he amount of support determined without reference to the deviation criteria is presumed to be the correct amount of support, and that presumption may only be rebutted by a specific finding on the record that the application of the guidelines would be inequitable or inappropriate under the circumstances of a particular case. When the latter is true, § 46b-215a-3 (b) (1) (B) [of the Regulations of

Connecticut State Agencies, now § 46b-215a-5c (b) (1) (B)] allows deviation from the guidelines on the basis of a parent's earning capacity." (Internal quotation marks omitted.) Id.

"Given this regulatory framework, a court errs in calculating child support on the basis of a parent's earning capacity without first stating the presumptive support amount at which it arrived by applying the guidelines and using the parent's actual income *and* second finding application of the guidelines to be inequitable or inappropriate." (Emphasis in original.) *Battistotti* v. *Suzanne A.*, supra, 182 Conn. App. 52 n.8; see also *Barcelo* v. *Barcelo*, supra, 158 Conn. App. 215; *Fox* v. *Fox*, supra, 152 Conn. App. 635.

In the present case, the trial court did not determine the defendant's actual income and then calculate the presumptive child support amount. The record does not reflect a finding by the court about the defendant's actual income. As in *Fox*, the trial court erroneously calculated the defendant's child support obligation on the basis of his earning capacity without determining the defendant's actual income and using this determination to state the presumptive support amount under the guidelines. As explained in *Fox*, under the guidelines, earning capacity may be used as a deviation criterion but should not be used to determine the presumptive support amount itself. *Fox* v. *Fox*, supra, 152 Conn. App. 635. Additionally, the trial court did not make a finding that application of the guidelines would be inequitable or inappropriate, as required by § 46b-215a-5c (a) of the Regulations of Connecticut State Agencies.

"Although a trial court's discretion in a domestic relations matter may be broad, it is not so expansive that it encompasses clear omissions of required procedures for setting child support obligations in high income, high asset familial situations . . . . " Id., 640; see also *Barcelo* v. *Barcelo*, supra, 158 Conn. App. 217. Consistent with the mosaic doctrine, although this error only pertains to the court's determination of child support, the proper remedy is to remand this matter for reconsideration of all of its financial orders.[6] *Barcelo* v. *Barcelo*, supra, 217, 226–27; *Fox* v. *Fox*, supra, 640–41; *O'Brien* v. *O'Brien*, 138 Conn. App. 544, 555, 53 A.3d 1039 (2012), cert. denied, 308 Conn. 937, 66 A.3d 500 (2013).

II

The defendant next claims that the court abused its discretion by ordering him to pay nonmodifiable unallocated alimony and child support.[7] Specifically, he argues, inter alia, that the court's order improperly precludes reductions based on each child attaining the age of majority. We agree.

"As a general matter, [t]he obligation of a parent to support a child terminates when the child attains the age of majority, which, in this state, is eighteen. General

Statutes § 1-1d . . . .'' (Citation omitted; internal quotation marks omitted.) *Malpeso* v. *Malpeso*, 165 Conn. App. 151, 176, 138 A.3d 1069 (2016). In *Hughes* v. *Hughes*, 95 Conn. App. 200, 895 A.2d 274, cert. denied, 280 Conn. 902, 907 A.2d 90 (2006), after the court issued an unallocated order of alimony and child support, the plaintiff claimed that, because the order provided for no reduction as each child attained the age of majority, a portion of the support order would necessarily be attributable to the support of a child who had surpassed the age of majority. Id., 209. In rejecting the plaintiff's claim, we stated: "The plaintiff fails to acknowledge . . . the fact that he may move to modify the combined alimony and support order at any time, including the date on which each child reaches the age of majority. This court has held that [w]hen, as part of a divorce decree, a parent is ordered to pay a specified amount periodically for the benefit of more than one child, the emancipation of one child does not automatically affect the liability of the parent for the full amount. . . . The proper remedy . . . is to seek a modification of the decree. . . . Thus, although the attainment of majority by each child may not automatically entitle the plaintiff to a reduction in his alimony and support obligation, it provides a basis for the plaintiff to seek a modification. Because the order as framed by the court does not, by its own terms, require a payment of combined alimony and support beyond the dates on which the children reach the age of majority, and *because the order is subject to modification as each child reaches the age of majority*, it does not violate the proscription against orders for the payment of support beyond the permissible age." (Citation omitted; emphasis added; footnote omitted; internal quotation marks omitted.) Id., 209–10; see also *Matles* v. *Matles*, 8 Conn. App. 76, 81, 511 A.2d 363 (1986) ("when an order for unallocated alimony and support is entered and when that order does not contain a provision for specific reduction or reallocation upon the child's majority, there is implicit in such order the contemplation that when the child attains majority the trial court, upon motion of either party, must conduct a hearing to ascertain what part, if any, of the order is then attributable to child support and it must modify the order to reflect the same").

In the present case, the court ordered the defendant to pay $12,500 to the plaintiff each month as unallocated alimony and support. The court further ordered that the duration and amount of the payment were to be nonmodifiable by either party. Because the parties have three children, the result of this order is that the defendant will be unable to seek modification as each child attains the age of majority; the defendant, rather, will be required to pay the same amount of child support for three minor children, two minor children and one minor child. We, therefore, conclude that the court abused its discretion in making the unallocated alimony

and child support order nonmodifiable as to term or amount.[8]

The judgment is reversed only as to the financial orders and the case is remanded for further proceedings consistent with this opinion; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] In his initial brief, the defendant argued that (1) the court's determination of his gross and net income was clearly erroneous, (2) the court abused its discretion in ordering that the defendant pay 70 percent of his gross income and more than 100 percent of his net income to the plaintiff and (3) the court abused its discretion by ordering the defendant to pay nonmodifiable unallocated alimony and support. Following an articulation by the trial court and supplemental briefing by the parties, the defendant argued that the court erroneously computed his presumptive child support obligation and that the factual basis articulated by the trial court does not support its findings as to the defendant's gross and net annual earning capacity. Because we conclude that the trial court erroneously computed the defendant's presumptive child support obligation by relying on his earning capacity rather than his actual earnings, we reverse the judgment and remand the case to the trial court for reconsideration of all of its financial orders. We, therefore, need not consider the defendant's additional claims pertaining to the calculation of the financial orders. We will, however, consider the defendant's claim that the court abused its discretion by ordering the defendant to pay nonmodifiable unallocated alimony and support, as this issue is likely to arise on remand.

[2] November 3, 2025, is the eighteenth birthday of the parties' youngest child.

[3] "Even though an unallocated order incorporates alimony and child support without delineating specific amounts for each component, the unallocated order, along with other financial orders, necessarily includes a portion attributable to child support in an amount sufficient to satisfy the guidelines." *Tomlinson* v. *Tomlinson*, 305 Conn. 539, 558, 46 A.3d 112 (2012).

[4] This court's order stated: "Pursuant to Practice Book [§§] 61-10 and 60-5, [this] court hereby orders the trial court, *Tindill, J.* . . . to articulate: (1) whether the finding of weekly gross income of $5288, as recorded on court exhibit B (worksheet for the Connecticut Child Support and Arrearage Guidelines), represented a finding as to the actual income or the earning capacity of the defendant . . . and (2) the factual basis for that finding."

[5] The court further stated that review and consideration of the following factors formed the factual basis for its finding that the defendant could realistically be expected to earn the gross and net income amounts on the worksheet: the defendant's age, the defendant's testimony that he was in good health, the parties' testimony that the defendant graduated from Pace University with degrees in math and physics, the defendant's testimony that he has insurance licenses in property, casualty, life and health and that he has passed some actuary exams, the defendant's testimony regarding his work history, purchase and ownership of insurance businesses, and formation of insurance businesses, the defendant's financial affidavits, the parties' worksheets, certain exhibits filed by the defendant and the testimony from both parties and Robert Pintucci, the defendant's accountant, regarding the parties' finances.

[6] The plaintiff concedes that, pursuant to *Fox* v. *Fox*, supra, 152 Conn. App. 632, the court erroneously computed the defendant's presumptive minimum child support obligation on the basis of the defendant's earning capacity rather than his actual earnings. She argues, however, that the defendant has waived this issue because he argued, in his initial brief, that the evidence was insufficient regarding his income while in his supplemental brief, he argues that the court did not properly apply the guidelines pursuant to *Fox*. We disagree.

It was not until the trial court issued its articulation in response to this court's order, subsequent to oral argument before this court, that the trial court indicated that the gross income amount of $5288 reflected on the worksheet represented the defendant's earning capacity. The court's initial memorandum of decision did not reference the defendant's earning capacity and the box for "earning capacity" was not checked by the court in the worksheet attached to its decision. Following the court's articulation, we ordered the parties to file supplemental briefs. Under these circumstances,

we cannot agree that the defendant has waived his right to argue that the court erroneously computed his presumptive minimum child support amount by relying on his earning capacity rather than his actual earnings.

[7] General Statutes § 46b-86 (a) provides, in relevant part: "Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support . . . may, at any time thereafter, be continued, set aside, altered or modified by the court upon a showing of a substantial change in the circumstances of either party or upon a showing that the final order for child support substantially deviates from the child support guidelines established pursuant to section 46b-215a . . . ."

[8] Because on remand the trial court may again entertain the issuance of a nonmodifiable support order, this court notes the following. Although General Statutes § 46b-86 (a) authorizes the court to modify support orders "[u]nless and to the extent that the decree precludes modification," the manner in which the trial court should exercise its discretion under the statute to issue nonmodifiable child support orders is not articulated and remains unclear. The need for adequate financial support of minor children from their parents is an established public policy. See *Sablosky* v. *Sablosky*, 258 Conn. 713, 721, 784 A.2d 890 (2001). In light of this public policy, a question remains as to what extent a trial court may issue a child support order that remains nonmodifiable even in the event of a substantial, or, for example, a catastrophic, change in the circumstances of a parent, a child or both. Stated differently, a question continues to exist as to whether the trial court, having the authority under § 46b-86 (a) to issue a nonmodifiable child support order, reasonably exercises its authority under the statute by issuing a child support order that precludes modification even in the event of a substantial change of circumstances adversely affecting the adequacy of financial support for the child. Compare *Amodio* v. *Amodio*, 56 Conn. App. 459, 472, 743 A.2d 1135 ("[t]he plain language of § 46b-86 [a] . . . makes clear that if a decree precludes modification . . . no modification may be had"), cert. granted, 253 Conn. 910, 754 A.2d 160 (2000) (appeal withdrawn September 27, 2000), with *Guille* v. *Guille*, 196 Conn. 260, 265, 492 A.2d 175 (1985) (observing that minor children of marriage have right to support, which parents cannot contractually limit, and concluding that "neither the general language of . . . § 46b-86 [a] . . . nor the decree's broadly phrased nonmodifiability provision, was effective to restrict permanently the court's power to modify the terms of child support under the circumstances of [that] case"); and *Rempt* v. *Rempt*, 5 Conn. App. 85, 88, 496 A.2d 988 (1985) (following *Guille* v. *Guille*, supra, 265). In *Tomlinson* v. *Tomlinson*, 305 Conn. 539, 548 n.4, 46 A.3d 112 (2012), our Supreme Court acknowledged that existing jurisprudence on this issue "does not contain an easily discernible thread." The court "invite[d] the legislature to clarify the circumstances, if any, under which child support may be made nonmodifiable, as well as the circumstances in which public policy would dictate that child support orders remain modifiable, notwithstanding language in the decree to the contrary." Id., 549 n.6.